OPINION OF THE COURT
Gerard M. Weisberg, J.
We have before us the following three motions: claimant’s application to strike the State’s answer for a failure to comply with discovery demands (CPLR 3126); defendant’s cross motion to dismiss pursuant to CPLR 3211; and claimant’s petition to file and serve a late claim (Court of Claims Act § 10 [6]).
BACKGROUND
As alleged in claimant Mobil Health, Inc.’s papers, between 1979 and 1987 it performed approximately $15,000,000 worth of examinations and reports at the request of the New York State Office of Disability Determinations. The claimant would be notified of the papers it was to prepare by way of a voucher sent by the defendant’s Department of Social Services. The voucher would recite exactly what was to be done and the fee to be received. Significantly, neither side informed us of the procedure for payment. Presumably the report and voucher were returned to the defendant. How long claimant had to do so and how long thereafter the State had to pay, we were not told, only that payments were made in a "sporadic, uneven and inconsistent” manner.
As evidenced by a letter from the Office of Disability Determinations to claimant dated June 16, 1988, in the early part of that year, claimant submitted or resubmitted 1,145 vouchers totaling $130,065.08 for services provided from 1981 to 1987, which, according to the claimant, had not been paid. Defendant researched its records and concluded the following:
*786 Paid — 731 vouchers representing $86,683.38 have been paid.
Open Status — 249 vouchers representing $25,196.31 have been deemed appropriate for payment.
Canceled — 66 vouchers were canceled; $5,516.56.
Not Found — No information was found on 104 vouchers; $12,668.84.
The letter then goes on to say: "As referenced above, our records indicate that 249 vouchers are appropriate for payment. We have supplied you with blank vouchers which must be completed and submitted with a copy of the original voucher and the medical report for the 249 outstanding claims. Please see example attached. Upon receipt, we will process these for payment.”
Six months later, in a letter dated December 19, 1988, the Office of Disability Determinations again wrote to claimant. This letter concluded "After extensive research, our records indicate that 238 vouchers representing $24,067.49 are deemed as appropriate for payment.” The letter then added that such amount would constitute payment in full and included a proposed release in favor of the defendant. Claimant responded by serving and filing a notice of intention to file a claim on February 14, 1989, and February 17, 1989, respectively, and filed a claim on August 1, 1989.
Thereafter, claimant served on defendant a notice to produce the original vouchers, reports and proof of payment with respect to an "attached list.” The list was apparently claimant’s accounts receivable computer run as of December 1988, which numbered over 100 pages and itemized, in several thousand entries, all services provided from 1982 to 1988. Defendant refused to comply with this demand on the theory that it was burdensome and that the claim was untimely. Claimant then moved to strike the State’s answer.
Defendant responded by cross-moving to dismiss the original claim. The next day claimant served an amended claim. While it is unverified, there is no evidence that the State rejected it. Claimant also moved for leave to file a late claim.
THE CROSS MOTION TO DISMISS
In its motion, defendant argued that the original claim failed to state a cause of action because it did not list the dates when medical services were allegedly provided, thus *787 violating Court of Claims Act § 11. It also asserted that the claim was untimely inasmuch as the notice of intention was served and filed more than six months after the last date services were rendered.
LACK OF VERIFICATION
As an initial matter we note that although the amended claim was timely served it was unverified. It is interesting to note that while Court of Claims Act § 11 requires a claim to be verified, it and the Uniform Rules for the Court of Claims are silent as to whether an amended claim must be verified. (See, 22 NYCRR 206.7; cf, CPLR 3020.) Inasmuch as an amended claim becomes the only claim in a case, and a claim must be verified, presumably an amended claim must be verified. Claimant’s amended claim is therefore defective.
A lack of verification is a waivable deficiency. (Matter of Ames Dept. Stores v Assessor of Town of Concord, 102 AD2d 9; cf., CPLR 3022.) In the absence of any indication that the State objected or rejected the amended claim, we find the lack of verification to have been waived. (Walker v State of New York, NYLJ, Aug. 6, 1990, at 21, col 1.)
FAILURE TO COMPLY WITH SECTION 11
The first avenue of attack is that the claim fails to state a cause of action in that it does not recite the dates when services were allegedly provided to the Department of Social Services. The State cites Court of Claims Act § 11 in support of this proposition.
First, both the original and amended claims clearly state a cause of action. They allege the existence of a contract, claimant’s performance thereunder and defendant’s breach thereof and damages, to wit, its failure to pay. What the State apparently means is that the claim fails to comply with certain requirements of section 11 regardless of whether it otherwise states a cause of action under the common law.
As to Court of Claims Act § 11, it is defendant’s position that each time claimant performed an examination, a separate cause of action accrued. It therefore cites the failure to itemize all the thousands of transactions as a failure of pleading under the section. (See also, 22 NYCRR 206.6 [b].) However, it is claimant’s position that there existed only one contract and therefore one cause of action which accrued when the Office of Disability Determinations rejected the *788 vouchers in 1988. As a matter of law, this is not impossible. (See, e.g., Matter of Philippe, 31 Misc 2d 193, affd without opn 19 AD2d 587, affd without opn 14 NY2d 600.) While it may turn out that claimant’s analysis is incorrect, as a matter of pleading, claimant has complied with the cited provision and alleged when it believes the claim to have accrued. (See also, Nance v State of New York, Ct Cl, Nov. 16, 1990, Lyons, J.)
Moreover, we note that no mention of a defect under section 11 was asserted in the answer. Case law has held this type of defect, if it be one at all, not to be one of subject matter jurisdiction and therefore waivable. (Conklin v State of New York, 46 AD2d 936, affd 38 NY2d 726.) This is particularly true where, as here, no prejudice can arise because the State has already been provided with all the dates and particulars when it was served with the accounts receivable run.
MOTION TO FILE A LATE CLAIM
Anticipating that it may not prevail in its argument that one cause of action existed which did not accrue until December 1988, claimant has also moved for leave to file a late claim. The factors which we must consider are whether the delay in filing the claim was excusable; whether the defendant had notice of the essential facts constituting the claim; whether the State had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim resulted in substantial prejudice to the State; and whether the claimant has any other available remedy. (Court of Claims Act § 10 [6].)
Defendant opposes this relief primarily on two grounds: that any services provided more than six years before the service of the motion is barred by the Statute of Limitations and that the claimant’s delay in moving has prejudiced it because its records are now insufficient to investigate and determine what services were rendered and what payments were made.
As to the latter, we note that as of late 1988, the Office of Disability Determinations in its letter to claimant stated that it was able to investigate 1,145 of claimant’s vouchers, dating as far back as 1981, and was only unable to locate information with respect to 104 of them. Moreover, inasmuch as it was aware that a dispute existed, it would hardly have been justified in destroying the records thereafter. We therefore do not understand the State’s difficulties now.
*789 As to the Statute of Limitations, of course any cause of action more than six years old is beyond recall under Court of Claims Act § 10 (6). (Muscat v State of New York, 103 Misc 2d 589.) As we indicated above,[1] however, the date or dates of accrual is a factual determination which we cannot make on the papers before us and must therefore await trial.
It may be that claimant does not need this relief at all. It may be that the relief is unavailable due to the Statute of Limitations or otherwise. However, the claim is clearly meritorious, at least in part.[2] Moreover, it may turn out that claimant has causes of action more than six months but less than six years old, and claimant has no other remedy. We therefore believe allowing it to file a late claim subject to whatever may be revealed at trial is the most equitable course.
CONCLUSION
In conclusion, the defendant’s cross motion to dismiss is denied without prejudice to its renewal at trial, or in a motion for summary judgment, upon a showing that some or all of claimant’s cause or causes of action are late. Claimant’s motion to file a late claim is granted, again without prejudice to defendant’s establishing at trial that some or all of claimant’s cause or causes of action accrued more than six years before the service of the motion or that it is unable to properly investigate the circumstances and is substantially prejudiced thereby.
Finally, as to claimant’s motion to strike the State’s answer for its failure to produce demanded documents, claimant reduced its demand to proof of payments. Defendant states it *790 does not have these documents. Inasmuch as payment is an affirmative defense to be proven by the defendant (Richardson, Evidence § 103 [Prince 10th ed]), the only conceivable prejudice that could accrue to claimant from this failure is if it is surprised at trial. The State will therefore be precluded from proving payment with respect to any of the services claimant allegedly provided unless it produces and delivers to claimant such proof not less than 15 days before trial.
[Portions of opinion omitted for purposes of publication.]

. There exist many pronouncements on the question of when a claim for breach of contract arises. (See, e.g., New York Tel. Co. v State of New York, 130 Misc 2d 575 [claim accrues on receipt of invoice]; Edwards v State of New York, 95 Misc 2d 516 [claim accrues after audit and rejection].) Without analyzing all of them, we think there can be little disagreement with the proposition that a claim does not accrue until there has been a breach of the terms of the contract being sued upon, which is itself a function of what the parties intended.

. Here, clearly, the Office of Disability Determinations’ letters of June 1988 and December 1988 created an account stated in the approximate amount of $24,000. The first letter unconditionally admits that such was owed and the second reiterated a similar amount. The claim is therefore timely, at least with respect to this amount, regardless of when the underlying services were originally provided. (See also, General Obligations Law § 17-101.)